UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMG, dba ASM STOCKTON, a Pennsylvania general partnership,<br><br>Plaintiff,<br><br>v.<br><br>THAT CERTAIN 1985 WELLCRAFT 3200 EXPRESS CRUISER MOTOR YACHT of Approximately 35.6-Feet in Length and 11-Feet 8 Inches in Beam, Registered With California DMV under CF Number 4111UC, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS, AND ALL OTHER APPURTENANCES, in rem,<br><br>Defendants. | No. 2:25-cv-1008 DC AC<br><br>FINDINGS AND RECOMMENDATIONS |

This matter is before the court on plaintiff's motion for an interlocutory vessel sale. ECF No. 24. Defendants have not appeared in this case. The motion is before the undersigned for findings and recommendations. ECF No. 25. For the reasons set forth below, the undersigned recommends the motion be GRANTED.

## I. Background

This case was commenced on April 3, 2025, with the filing of a complaint for vessel arrest, interlocutory sale, and damages. ECF No. 1. According to the complaint, plaintiff

1

operates a marina located in Stockton, California.  ECF No. 1 at 2.  The defendant vessel is a 1985 Wellcraft 32000 Express Cruiser motor yacht approximately 35.6 feet in length, registered with the California Department of Motor Vehicles under CF Number 4111UC.  Id.

On or about October 17, 2024, the owner of the 1985 Wellcraft ("Defendant Vessel"), Colton David Wood, executed a Maritime Contract for Private Wharfage pursuant to which plaintiff provided a slip for berthing the Defendant Vessel and permitted Wood to inhabit her.  Id.  Plaintiff attached a copy of the contract to the complaint as Exhibit A.  The Defendant Vessel arrived at the marina on October 24, 2024.  ECF No. 1 at 2.  Soon after, Wood started engaging in bizarre and threatening conduct.  Id. at 3.  The complaint outlines multiple occasions on which Wood used violent and racist language toward marina staff.  Plaintiff alleges that Wood made threats to employees, and that other marina tenants expressed concerns to the marina manager and employees.

Paragraph 9 of the Wharfage Contract permits either party to terminate the Wharfage Contract by providing the other party with at least 30 days' advance written notice, and paragraphs 1 and 12 prohibit behavior that disturbs the peaceful use of the marina by others and allows for immediate termination of the contract in the event that a tenant creates disorder or displays indecorous conduct.  Id. at 4, ECF No. 1-1 at 6.  Plaintiff's attorney sent Wood a letter on December 27, 2024, memorializing the incidents of Wood's outrageous conduct, noting that pursuant to the terms of the contract Wood's behavior was grounds for immediate termination of the tenancy, and informing Wood that the Defendant Vessel needed to be removed by midnight on December 31, 2024, or she would be regarded as a trespasser and Wood's access to the marina would be restricted.  Id. at 4-5.  The letter also cautioned Wood that if the Defendant Vessel was not removed, she would be subject to arrest pursuant to the Commercial Instruments and Maritime Lein Act, and Supplemental Admiralty Rules C and E.  Id. at 5.

Wood failed to remove the Defendant Vessel by December 31, 2024, and she remained there as of the time the complaint was filed.  Id.  Plaintiff's attorney, who maintains his primary office in San Diego, received a letter from Wood dated January 16, 2025 in which Wood threatened, "Also, I'll draft [sic.] 500 miles to settle a score.  I got business in San Diego

anyway." Id. On February 1, 2025, plaintiff's marina manager was informed that Wood brought a second vessel to the marina and secured her there without contractual, statutory, to other authority. Id. The manager advised Wood that he was not allowed to bring a second vessel to the marina. Id. Wood called the Stockton Police Department, who referred the call to the County Sherriff, which operates marine patrol. Id. The marina manager provided the officers with a copy of a Temporary Restraining Order, obtained January 21, 2025, which prohibits Wood from deviating from the route between his car and the Defendant Vessel. Id. Wood was admonished that if he deviated from this route on the marina property, he would be subject to arrest. Id.

On February 1, 2025, Wood posted a YouTube video in which he used racist slurs in reference to the marina manager and threatened the marina managers' children using vulgar, racist language. Id. at 5-6. On February 5, 2025, Wood harassed a marina security guard and the marina manager. Id. at 6. The City of Stockton Police responded and arrested Wood, charging him with felony threatening crime and intent to terrorize the marina manager, misdemeanor annoying calls to 911, misdemeanor contempt of court, and disobedience of a court order. Id. Plaintiff is informed and believes that Wood posted bail in the amount of $85,000 and was released that day. Id. On February 21, 2025, plaintiff's attorney sent Wood an email noting that although more than six weeks had elapsed since counsel provided notice of the termination of the wharfage contract, the Defendant Vessel remained at the marina, and that she and Wood were trespassing. Id. The same day, Wood responded, in relevant part, "I guess I will abandon the boat on the water or maybe burn it or something to keep people from profiting off my misfortune." Id. at 7.

On February 21, 2025, a criminal protective order was issued against Wood to protect the Marina Manager. Id. at 7. On February 22, 2025, Wood was arrested and charged with a felony for making a false bomb report and a misdemeanor for annoying calls to 911. Id. On February 28, 2025, a Workplace Violence Restraining Order was issued against Wood at plaintiff's request, requiring him to stay at least 25 yards away from the marina manager and three other marina employees. Id. Between March 2 and Mrach 5, 2025, Wood posted multiple videos to YouTube memorializing his harassment of people at the marina and his threatening behavior. Id.

On Mrach 26, 2025, two mental health professionals, accompanied by approximately eight City of Stockton police officers and at least two San Juaquin County Boat Patrol officers, arrived at the marina to speak with Wood. Id. Wood retreated into the Defendant Vessel and refused to leave, documenting the event on YouTube. Id. at 8. The same day, the Defendant Vessel was moved to another dock and the security guard presented Wood with a letter informing him of the movement and the provision under the contract allowing the movement. Id. Wood was also informed that he could access the Defendant Vessel through the locked gate by calling security personnel. Id. On March 27, 2025, Wood used a power angle grinder, in the presence of security personnel, to cut off the locking mechanism of the dock with the Defendant Vessel was berthed. Id. Plaintiff then installed a chain lock as a temporary measure to secure the dock. Id. Wood came back later that day and used the same tool to cut the chain, posting a video of himself on YouTube during the process. Id.

Plaintiff retained welders to re-secure the lock mechanism, but while the welders were working Wood accosted them and demanded that they stop. Id. The marina manager attempted to intervene, at which point Wood used his cell phone to strike the marina manager in the head, causing a laceration and profuse bleeding. Id. Wood forced the marina manager to the ground. Id. The two welders restrained Wood while the police were summoned. Id. Plaintiff is informed and believes that Wood has an extensive arrest record, including multiple arrests for trespassing and battery. Id. at 9-10.

Plaintiff filed the complaint in this case on April 3, 2025, raising several causes of action: Foreclosure on a Maritime Tort Lein, Brach of Maritime Contract for Necessaries, and Quantum Meruit. Id. at 2-12. On April 14, 2025, a warrant for arrest of the Defendant Vessel was issued by the court. ECF No 10. On June 16, 2025, an order of publication was signed ordering a Notice of Vessel Arrest to be published in the Stockton Record pursuant to Rule C(4) of the Supplemental Admiratory Rules for Certain Admiralty and Maritime Claims. ECF No. 18. An Affidavit of Publication was filed on July 8, 2025. ECF No. 19. Defendant did not appear, and the Clerk of Court entered default against the Defendant Vessel on July 17, 2025. ECF No. 22. On August 1, 2025, the motion at bar for interlocutory vessel sale was filed. ECF No. 24. On

1  August 21, 2025, the District Judge referred the motion to the undersigned for findings and
2  recommendations.  ECF No. 25.  On August 21, plaintiff re-noticed the motion before the
3  undersigned for hearing on October 15, 2025.  ECF No. 27.  The matter was taken under
4  submission on the papers pursuant to Local Rule 230(g).  No opposition was filed.

## II. Analysis

### A. Legal Standards Governing Motion for Interlocutory Vessel Sale

Federal courts are vested with admiralty jurisdiction under the Constitution and federal statute. U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 1333(1).  A contract for wharfage is a maritime contract, Ex Parte Easton, 95 U.S. 68, 75 (1877), and accordingly a case is within admiralty jurisdiction under 28 U.S.C. § 1331 "if wharfage is provided to a specific vessel." Royal Ins. Co. of America v. Pier 39 Ltd. P'ship, 738 F.2d 1035, 1037 (9th Cir. 1984) (citing Ex Parte Easton, 95 U.S. 68, 24 L.Ed. 373 (1877)).  A maritime lien on the vessel is established in favor of those who provide necessaries for the benefit of a vessel.  46 U.S.C. § 31342(a) ("a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner - (1) has a maritime lien on the vessel; and (2) may bring a civil action in rem to enforce the lien").  Here, plaintiff seeks foreclosure on its maritime lien arising under the wharfage contract at issue through the interlocutory sale of the Defendant Vessel.

"The interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale, with all of the constitutional safeguards necessitated by the *in rem* process." Ferrous Fin. Servs. Co. v. O/S Arctic Producer, 567 F. Supp. 400, 401 (W.D. Wash. 1983).  Rule (E)(9)(a)1 of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Claims ("Supplemental Admiralty Rules"), governs interlocutory vessel sales and provides, in relevant part:

> (i) On application of a party, the marshal, or other person having custody of the property, the court may order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:
>
> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;

>    (B) the expense of keeping the property is excessive or disproportionate; or
>
>    (C) there is an unreasonable delay in securing release of the property.

Fed. R. Civ. P., Suppl. Adm. R. E(9)(a). "To justify an interlocutory sale, Plaintiff need only establish the existence of one of the three provisions listed in Rule E(9)(a)(i)." Rainaldi Family Trust Dated February 26, 2004 v. M/Y Excalibur, U.S.C.G. Official No. 1057893, Case No. SACV 19-00684 AG (JDEx), 2019 WL 6794218, at *2, 2019 U.S. Dist. LEXIS 217421 (C.D. Cal. Aug. 6, 2019) (citation omitted); Merchants Nat'l Bank of Mobile v. Dredge Gen. G.L. Gillespie, 663 F.2d 1338, 1341 (5th Cir. 1981) ("In order to prevail, the lienors need only show one of the three criteria.").

### B. The Conditions for Interlocutory Sale are Established

Though plaintiff need only show that one condition for an interlocutory vessel sale is met to justify the sale, plaintiff has established all three.

#### 1. The Defendant Vessel is in Deteriorating Condition

Plaintiff contends that the Defendant Vessel is deteriorating in condition and value by reason of her idleness while in custody. ECF No. 24 at 9. In support of this assertion, plaintiff submitted a declaration from Ray Jones, President of Long Beach Sales, Inc. and a licensed yacht broker for approximately 42 years, who has sold many thousands of vessels over the years and has served as an expert in cases involving vessel condition and valuation matters several dozens of times. Jones Decl. at ¶¶ 1, 2. (ECF No. 24-3). Jones opined that with respect to the Defendant Vessel and her deterioration while under arrest that: "It is commonly understood among experienced vessel owners, yacht brokers and others who routinely deal with boats that even well and regularly maintained vessels *inevitably* deteriorate in condition and value over time. Such deterioration is *substantially exacerbated* when vessels (as in this case) sit idle under arrest, without routine maintenance for extended periods in a saltwater environment." Id. (emphasis original). Based on these uncontested representations, the court concludes plaintiff has sufficiently established the deterioration criteria under Supplemental Admiralty Rules.

////

2. <u>The Expense of Keeping the Defendant Vessel is Excessive and Disproportionate</u>

Plaintiff also contends that the cost of maintaining the Defendant Vessel is "excessive or disproportionate." ECF No. 27 at 10. Jones avers that the fair market value of the Defendant Vessel is approximately $2,500.00. Jones Decl. at ¶3. This court's Order Appointing Substitute Custodian (ECF No. 8) provides that the custodian of the Defendant Vessel shall be compensated for storage of the vessel and general custodial services at the rate of $3.00 per foot of vessel length per day, which is $106.80 per day. At the time of this writing, the vessel has been arrested for nearly six months. Accordingly, custodial fees for vessel storage and general custodial service will have accrued in an amount well over $15,000. In addition, the Order Appointing Substitute Custodian provides for further compensation in the amount of $250.00 per week, for inspections of the interior of the Defendant Vessel to check for watertight integrity, excessive bilge water, fuel leaks and other problems. ECF No. 8. Thus, further custodian fees for such services will have accrued an additional expense of over $5,000. Because the presumed value of the Defendant Vessel is $2,500.00 and the custodial fees incurred amount to well over $20,000.00, plaintiff has established that costs are excessive and disproportionate within the meaning of the Supplemental Admiralty Rules.

3. <u>There is an Unreasonable Delay in Securing the Release of the Property</u>

Finally, plaintiff contends that no security has been posted, and no offer has been made to post security for almost six months since the Defendant Vessel's arrest. "As a general rule, defendants are given at least four months to bond a vessel absent some other considerations." <u>Bartell Hotels v. S/L Talus</u>, 445 F. Supp. 3d 983, 988 (S.D. Cal. 2020) (internal quotation omitted).[1] Here, the Vessel was arrested on April 15, 2025, just over six months ago. ECF No. 9. Default has been entered and no person claiming interest in the vessel has come forward to secure the Defendant Vessel's release. Therefore, there has been an unreasonable delay in securing the release of the vessel. Plaintiff has established unreasonable delay within the meaning of the

---

[1] The original quote can be found in <u>United States v. F/V Fortune</u>, No. A86-445 CIVIL, 1987 WL 27274, at *1 (D. Alaska Apr. 14, 1987).

7

Supplemental Admiralty Rules.

### C. Authorization to Credit Bid

Plaintiff asks the court to credit bid at the U.S. Marshal auction for the Defendant Vessel. No. 24-6 at 9. The Local Rules in the Eastern District of California do not expressly authorize credit bidding in a vessel arrest action, in contrast to the local rules of the Northern District, the Central District and the Southern District, all of which permit a plaintiff with a claim senior to all other parties to credit bid at U.S. Marshal auctions, up to the total indebtedness, provided an affidavit is filed and served in advance of the auction, establishing the amount of the indebtedness. See N.D. Cal. Local Admiralty Rule 9-2(b) ("Notwithstanding the above, a plaintiff or intervening plaintiff foreclosing a properly recorded preferred mortgage on, or other valid security interest in the vessel may bid, without payment of cash, certified check or cashier's check, up to the total amount of the secured indebtedness as established by affidavit filed and served by that party on all other parties no later than 14 days prior to the date of sale"); C.D. Cal. Local Admiralty Rule E.15(b); S.D. Cal. Admiralty Rule E.1(e)(2). Though the Local Rules of this court do specifically contemplate credit bidding (see E.D. Cal. Local Rule 570(b)), courts in this district have permitted a plaintiff to credit bid certain unpaid wharfage fees, U.S. Marshal fees, fees for the publication of the notice of vessel arrest, fees for publication of the notice of vessel sale, and substitute custodian fees as authorized by the Court's Order appointing plaintiff as the substitute custodian. See, Benicia Harbor Corp. v. Louise, 2024 WL 281301, 2024 U.S. Dist. LEXIS 16481 (E.D. Cal. 2024).

Here, no party apart from plaintiff has asserted any maritime lien claim against the Defendant Vessel. As the only maritime lien claim, plaintiff's claim is, by definition, senior to all other claims in this action. The undersigned therefore concludes that it is reasonable, just and proper for it to permit plaintiff to credit bid at the U.S. Marshal auction of the Defendant Vessel in an amount up to the lien amount attested to in both the currently filed Declaration of Chris Magro (ECF No. 24-4) and in the complaint ($3,150.00), plus its actual and demonstrable costs of suit, including substitute custodian and other *custodia legis* expenses, to be calculated through the date of the vessel sale at the above specified rates, and as provided by this Court's Order

Appointing Substitute Custodian and Authorizing Movement of Vessel, provided plaintiff establishes such damages by way of a declaration filed and served at least 14 days in advance of the U.S. Marshal auction.

### III.  Conclusion

Accordingly, the undersigned recommends as follows:

1. Because plaintiff has demonstrated that all three factors of Rule (E)(9)(a) have been met, the plaintiff's motion for interlocutory vessel (ECF No. 24) sale should be GRANTED.
2. Plaintiff should be ordered entitled to credit bid at the U.S. Marshal auction an amount equal to its lien amount attested to in its Verified Complaint, $3,150, plus the above specified custodian fees $20,379.20 (totaling $23,529.20), calculated through the date the motion was filed (September 19, 2025), plus other costs of suit thereafter accruing until the date of the U.S. Marshal auction of the Defendant Vessel, excluding attorneys' fees.
3. The U.S. Marshal should be ordered to sell the Defendant Vessel at public auction as soon as possible, and that at such auction plaintiff may credit bid in the above specified amount, provided plaintiff at least fourteen (14) days before the auction establishes such indebtedness by a filed declaration.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: October 28, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE